921 So.2d 353 (2005)
Lamar McDONALD a/k/a Lamaar MacDonald, Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-KA-02077-COA.
Court of Appeals of Mississippi.
May 17, 2005.
Rehearing Denied November 15, 2005.
Certiorari Denied February 16, 2006.
*355 John Edward Jackson, Kurt Guthrie, attorneys for appellant.
Office of the Attorney General by Scott Stuart, attorney for appellee.
Before KING, C.J., CHANDLER and BARNES, JJ.
CHANDLER, J., for the Court.
¶ 1. The Pearl River County Circuit Court convicted Lamar McDonald of possession of a controlled substance and sale of a controlled substance. Miss.Code Ann. § 41-29-139(a)(1) (Supp.2004). McDonald appeals, raising the following issues:
I. WHETHER MCDONALD'S RIGHTS UNDER THE DOUBLE JEOPARDY CLAUSE WERE VIOLATED WHEN HE WAS FOUND GUILTY OF A LESSER-INCLUDED OFFENSE
II. WHETHER THE TRIAL COURT ERRED IN FAILING TO EXCUSE A JUROR FOR CAUSE
III. WHETHER MCDONALD RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL
IV. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE OFFICER TO INTERPRET THE CONTENTS OF THE TAPE RECORDING
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. The Picayune Police Department and the Drug Enforcement Administration (DEA) engaged in an undercover drug operation with the purpose of purchasing an ounce of crack cocaine from Lamar McDonald. A confidential informant introduced McDonald to undercover DEA agent Terry Davis. McDonald sold an ounce of crack cocaine for $550 to Agent Davis. Agent Davis, who was recording the transaction, asked if he might be able to purchase more cocaine from McDonald, and McDonald quoted him a price of $1,500 for three more ounces. After the transaction, McDonald left in his car.
¶ 4. Officer Joel Hudson tried to follow McDonald, but he was unable to maintain his cover, and he inadvertently confronted McDonald. McDonald lost control of his vehicle and fled on foot. The police conducted an inventory search of McDonald's vehicle and found another cookie of crack cocaine. Five days later, McDonald was apprehended and arrested. The grand jury indicted McDonald on two counts: (1) sale of a controlled substance and (2) possession of a controlled substance with the intent to distribute.[1] Both crimes are encompassed within Mississippi Code Annotated Section 41-29-139(a)(1) (Supp.2004).
¶ 5. During the voir dire stage of trial, McDonald's counsel asked the jury panel whether anyone was related by blood or marriage to anyone in law enforcement. Potential juror Susan Quave stated that she was married to a retired law enforcement officer. When the judge asked her whether she would accept what law enforcement said, she replied that she would tend to believe what the law enforcement agency presented. Quave was selected to serve on the jury.
¶ 6. When Officer Davis testified at trial, the prosecutor played the tape recording of the drug transaction. The prosecutor was then allowed to ask Officer Davis a series of questions that McDonald claims were impermissibly designed to elicit his interpretation of the tape recording.
¶ 7. At the conclusion of the trial, McDonald was found guilty of both crimes *356 and sentenced to serve two consecutive thirty year sentences, with the final twenty years of his second sentence suspended and five years in post-release supervision.

ANALYSIS

I. WHETHER MCDONALD'S RIGHTS UNDER THE DOUBLE JEOPARDY CLAUSE WERE VIOLATED
¶ 8. McDonald argues that his separate convictions were a violation of his rights under the Double Jeopardy Clause because the events which gave rise to his convictions were based on the same factual circumstances that arose out of the same transaction and that he should not be punished twice for the same events. The Mississippi Supreme Court has recognized that the Fifth Amendment protection against double jeopardy encompasses three separate sub-protections: (1) protection against a second prosecution for the same offense following an acquittal; (2) protection against a second prosecution for the same offense following a conviction; and (3) protection against multiple punishments for the same criminal offense. Thomas v. State, 711 So.2d 867, 870 (¶¶ 14-15) (Miss.1998). McDonald's appeal pertains to the protection against multiple convictions for the same criminal offense. This test "inquires whether each offense contains an element not contained in the other; if not, they are the `same offence' and double jeopardy bars additional punishment and successive prosecution." Id. at 870(¶ 15) (quoting United States v. Dixon, 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993)).
¶ 9. In the present case, the two offenses for which McDonald was convicted are sale of a controlled substance and possession of a controlled substance with intent to distribute. Both of these offenses are identified in Mississippi Code Annotated Section 41-29-139(a)(1) (Supp. 2004), which states: "Except as authorized by this article, it is unlawful for any person knowingly or intentionally: (1) To sell, barter, transfer, manufacture, distribute, dispense or possess with intent to sell, barter, transfer, manufacture, distribute or dispense, a controlled substance." Two independent crimes merge into one when the greater crime necessarily includes all the elements of the lesser crime as a lesser included (sic) offense. Smith v. State, 818 So.2d 383, 386(¶ 9) (Miss.Ct.App.2002) (citing Newburn v. State, 205 So.2d 260, 264 (Miss.1967)). McDonald argues that his separate offenses of possessing a controlled substance and selling a controlled substance merged, because the only difference between the two offenses is the additional step of actually selling the drugs.
¶ 10. In Laughter v. State, 241 So.2d 641 (Miss.1970), the Mississippi Supreme Court reversed and rendered the defendant's separate convictions of possession and sale of marijuana, because it found that a conviction of both crimes violated the defendant's rights under the Double Jeopardy Clause. However, in Laughter the court made it clear that the application of this principle is limited. The court noted, "[T]he one transaction principle does not apply when it is shown that a defendant had in his possession marijuana or other prohibitive drugs either before or after the sale. In other words, if the appellant had gone to a place where he had marijuana concealed, procured it and sold it to the undercover agent he could have been properly charged, convicted and punished for the possession and sale of marijuana." Id. at 643.
¶ 11. In the present case, McDonald sold an ounce of cocaine to a DEA agent. After the sale, the police conducted an inventory search of McDonald's vehicle and found another cookie of crack cocaine. *357 Because McDonald remained in possession of cocaine after he sold the cocaine to Officer Davis, he can be convicted for both possession and sale of a controlled substance without violating his rights under the Double Jeopardy Clause, consistent with the precedent established in Laughter v. State. This issue is without merit.

II. WHETHER THE TRIAL COURT ERRED IN FAILING TO EXCUSE A JUROR FOR CAUSE
¶ 12. During the jury selection process, McDonald's counsel asked whether anyone on the panel was related by blood or marriage to anyone in law enforcement. The juror identified as Susan Quave stated that she was married to a retired law enforcement officer, after which the following exchange occurred:
THE COURT: What Mr. Jackson [McDonald's counsel] is asking is would the fact that since your husband was in law enforcement for 17 years, obviously if law enforcement gets up here and testifies and the jury finds Mr. McDonald not guilty, they are going to have to not believe everything law enforcement tells them. And he's wanting to know would that give you a problem to where because of your association with law enforcement for 17 years you would just accept what law enforcement said and you wouldn't go against what maybe they said or could you just be independent?
A: I would tend to believe what the law enforcement agency presented.
THE COURT: So she said she would tend to believe what law enforcement BY MR. JACKSON: Thank you for your candor.
¶ 13. No follow-up questions were asked, McDonald's counsel did not object to the empaneling of Quave as a juror, and Quave served on the jury. McDonald argues Quave had an obvious bias in favor of law enforcement officers, and that the entire jury was tainted because of her bias.
¶ 14. In order to strike a juror for cause there must be a clear showing that the opinions of the prospective juror would substantially impair the performance of his duties. "A clear showing that a juror's views would prevent or significantly impair the performance of his duties requires more than a single response to an initial inquiry." Fuselier v. State, 468 So.2d 45, 55 (Miss.1985). A juror's views alone do not constitute grounds for a challenge. Martin v. State, 592 So.2d 987, 988 (Miss.1991).
¶ 15. To the extent that a juror, because of his relationship to the parties, his occupation, or his past experiences, might be biased against a party, this bias might impair his ability to be fair and impartial. However, it should be kept in mind that jurors take their oaths seriously, and this promise is entitled to considerable deference. Scott v. Ball, 595 So.2d 848, 850 (Miss.1992). "These varied imponderables make selection of jurors a judgment call peculiarly within the province of the circuit judge, and one we will not on appeal second guess in the absence of a record showing a clear abuse of discretion." Id. We do not find such an abuse of discretion in the present case. While Quave did say that she would tend to believe law enforcement officers, she gave no indication that she would actually decide in favor of the State because of her relationship to a former law enforcement officer. McDonald's counsel did not ask any additional questions to determine whether she would be unable to follow the court's instructions and obey her oath. Our examination of the record as a whole shows no abuse of discretion in allowing Quave to serve on the jury.

*358 III. WHETHER MCDONALD RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL
¶ 16. McDonald claims that his counsel was ineffective for failing to challenge Quave for cause when she clearly stated that she had a bias in favor of law enforcement officers. He argues that, since Quave was allowed to sit as a juror, the entire jury was tainted with bias and prejudice, which deprived McDonald of a fair trial.
¶ 17. To show ineffective assistance of counsel, the burden of proof is on the appellant to show that counsel's performance was ineffective, and that the defect was so prejudicial as to prevent a fair trial. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
¶ 18. For a successful claim of ineffective assistance on direct appeal, the appellant must show that the record affirmatively shows ineffectiveness of constitutional dimensions, or that the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge. Read v. State, 430 So.2d 832, 841 (Miss.1983). The question presented is not whether trial counsel was ineffective "but whether the trial judge, as a matter of law, had a duty to declare a mistrial or to order a new trial, sua sponte on the basis of trial counsel's performance." Colenburg v. State, 735 So.2d 1099, 1102(¶ 8) (Miss.Ct.App.1999). Such performance must be "so lacking in confidence that it becomes apparent or should be apparent that it is the duty of the trial judge to correct it so as to prevent a mockery of justice." Parham v. State, 229 So.2d 582, 583 (Miss.1969).
¶ 19. Counsel's decisions that fall within the ambit of trial strategy cannot give rise to an effective assistance of counsel claim. Cole v. State, 666 So.2d 767, 777 (Miss.1995). Jury selection decisions clearly fall within the ambit of trial strategy. Reynolds v. State, 784 So.2d 929, 934(¶ 16) (Miss.2001). In the present case, Ruby McDonald, the aunt of the appellant, testified as an alibi witness for McDonald. Quave personally knew Ruby McDonald. The judge asked Quave if she knew Ruby well enough that she would believe her and decide on how she would weigh Ruby's testimony after she finished testifying. Quave responded, "I think so." Quave's response supports a finding that McDonald's counsel may have believed Quave was a person who might return a favorable verdict for McDonald. In other words, the evidence shows that it was a reasonable trial strategy to allow Quave to serve as a juror. McDonald's argument is without merit.

IV. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE OFFICER TO INTERPRET THE CONTENTS OF THE TAPE RECORDING
¶ 20. The prosecution played for the jury the entire taped transaction recorded while Agent Davis was conversing with McDonald. McDonald argues that after this playing for the jury, Agent Davis was impermissibly asked to explain the various events on the tape. McDonald cites to several pages in the record that exemplify what he characterizes as impermissible questions that were asked at trial:
Q: And when you said "keep them in the house"
Who were you talking about?
A: I asked Mr. McGowan who was present at his house when I got there, because I was concerned that there were other people present. And I didn't want them directly involved or around during the transaction. That's when he told me that his wife and kids were at the house. And I told him that it was important for *359 them to stay in the house and to not come in and out or be outside where we were.
Q: Someone on the tape, also, said that the subject is on the way to the house. Who said that?
A: I said that.
Q: And who is the subject?
A: The subject was Mr. Lamar McDonald.
Q: When you said the subject was on the way to the house, which house were you referring to?
A: I was referring to Mr. McGowan's house.
Q: So when you said you will take a five for it, you meant you will take five hundred?
A: Yes.
Q: And the discussion about the break in the cocaine, that had to do with the weight?
A: That didn't have to do with the weight. It had to do when I talked to him about buying an ounce of crack cocaine, it was in a curricular [sic] shape and it wasit had crack in it. So I wanted to be sure that it was a good quality, that he hadn't done something to it or manipulated it in some way prior to me buying it, so that I was buying exactly the amount and the type of crack that I was suppose [sic] to have.
¶ 21. "Where proof of a conversation has been of two different kinds, namely, a recording thereof and testimony by witnesses who overheard it, it has been argued that both recording and testimony were the best evidence; however, the courts have not relegated either to a secondary position, but have held that both types of evidence are equally competent primary evidence, and that one is not to be excluded because of the existence of the other." Winters v. State, 473 So.2d 452, 458 (Miss.1985).
¶ 22. McDonald argues that it is impermissible for a court to allow a taped conversation into evidence and subsequently allow witnesses to interpret the contents of the tape. McDonald relies on Phillips v. State, 374 So.2d 824 (Miss.1979) (overruled on other grounds), a case in which the trial court allowed a taped conversation into evidence and later allowed the State's witnesses to testify about the taped conversation. The Mississippi Supreme Court affirmed, holding that "the officer's testimony was not for the purpose of interpreting the tapes." Id. at 825-26. McDonald argues that it was error for Officer Davis to editorialize the recording, because testimony which interprets a tape recording is inadmissible.
¶ 23. This Court finds no error regarding the admission of Agent Davis's testimony. In Phillips, the supreme court found admissible the officers' testimony regarding what they heard and what they saw during the conversation. Id. at 825. In other words, the purpose of the officers' testimony was not to interpret the audio tape but to provide context to the tape. Agent Davis's testimony similarly provides context to the drug transaction, and this type of testimony is permissible, pursuant to the holding in Phillips. Agent Davis identified the parties, identified the location of the transaction, stated the amount of the drug sale, and described the quality of the drugs that were being sold. Such testimony merely provides context to the drug transaction, and this testimony is admissible. Agent Davis's testimony did not interpret the recording, but simply supplemented it.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF PEARL RIVER COUNTY OF CONVICTION OF COUNT I, SALE OF A CONTROLLED *360 SUBSTANCE AND SENTENCE OF THIRTY YEARS; COUNT II, POSSESSION OF A CONTROLLED SUBSTANCE WITH INTENT TO DELIVER OR SELL AND SENTENCE OF THIRTY YEARS TO RUN CONSECUTIVELY TO SENTENCE IN COUNT I WITH TWENTY YEARS SUSPENDED, FIVE YEARS POST-RELEASE SUPERVISION, AND TEN YEARS TO SERVE, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PEARL RIVER COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.
NOTES
[1] The grand jury also indicted McDonald for a third count, which was nolle prosequied without prejudice to the State.