# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-00583-COA

**MICHAEL E. ROGERS**                                                        **APPELLANT**

**v.**

**ROBERT M. THAMES**                                                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/02/2018 |
| TRIAL JUDGE: | HON. JON MARK WEATHERS |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | GRAHAM PATRICK CARNER |
| | RAJU AUNDRE' BRANSON |
| | JESSICA ELIZABETH MURRAY |
| ATTORNEY FOR APPELLEE: | TRACE D. McRANEY |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 01/05/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WILSON, P.J., FOR THE COURT:**

¶1.     Michael Rogers sued Robert Thames for injuries he sustained when Thames's car collided with the rear of Rogers's truck while Rogers was stopped at a red light in Hattiesburg. Following a jury trial in the Forrest County Circuit Court, the jury found in favor of Rogers and awarded him damages of $13,000, and the court entered a judgment on the verdict. Rogers filed a motion for a new trial or an additur, which the trial judge denied, and a notice of appeal. In his opening brief on appeal, Rogers argues that the trial judge erred by excluding evidence regarding Thames's brakes, by denying challenges for cause during jury selection, and by denying Rogers's motion for a new trial. In his reply brief,

Rogers attempts to raise a new issue, arguing that the trial judge erred by denying Rogers's ore tenus motion to amend the complaint, which Rogers made after the jury had been selected. For the reasons discussed below, we find no reversible error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. The underlying facts of this case are simple and essentially undisputed. On May 16, 2015, Rogers was stopped at a red light in Hattiesburg in his pickup truck. Thames's car suddenly struck Rogers's truck from behind. The impact was hard enough that Rogers's head went through the rear window of his truck. Rogers declined medical attention and drove his truck home from the scene. The next day, Rogers went to the emergency room for back and neck pain. In March 2016, Rogers filed a complaint against Thames, alleging negligence. He sought damages for medical bills, pain and suffering, emotional distress, and lost wages.

¶3. Rogers took Thames's deposition in March 2017. Thames testified that he saw Rogers's truck ahead of him and thought that Rogers was going to proceed through the intersection on a yellow light. When Thames saw that Rogers was stopping at the light, he realized he was going to hit Rogers, and he "hit [his] brakes hard." Thames testified that "it had started just to sprinkle a little bit" prior to the accident, "so the road[] was kind of damp," which caused his car to slide. In addition, Thames stated that he "had bad brakes on [his] car," which also caused his car to "slide." Thames testified that he knew his brakes were not "the best brakes" because his car would "slide" when he "hit [the] brakes hard," and he could hear the brakes "squeak a little bit . . . at times." However, Thames did not have enough

2

money for brake repairs at the time. Thames was "pretty sure [he] would have stopped on impact" with Rogers's truck if his brakes had been in "good" condition. He also thought he "would have avoided the whole accident" if it had not been raining.

¶4.     In July 2017, Thames filed a "Stipulation of Negligence" in which he "stipulate[d] that [his own] negligence was the sole proximate cause of the [subject] accident." The stipulation stated that it did "not constitute a waiver of any affirmative defenses." Thames also filed a motion in limine to exclude any evidence regarding his brakes. Thames argued that based on his stipulation, such evidence was irrelevant and that its probative value was substantially outweighed by the danger of unfair prejudice. *See* M.R.E. 403. Thames's motion in limine also noted that Rogers had not made a claim for punitive damages.

¶5.     In July 2017, Rogers filed a response to Thames's motion in limine in which he argued that the evidence regarding Thames's brakes was relevant to the issue of punitive damages. Rogers argued that the evidence was proof of gross negligence and that he could be granted leave to amend his complaint to assert a claim for punitive damages. However, Rogers did not file a motion for leave to amend his complaint. Rogers also argued that the evidence was "relevant because it [told] the full story of what happened in this wreck."

¶6.     In September 2018, the case proceeded to trial. Prior to jury selection, the trial judge heard arguments on the motion in limine. Thames argued that evidence regarding his brakes was irrelevant and unfairly prejudicial in light of his stipulation that his negligence was the sole proximate cause of the accident. Thames also emphasized that "punitive damages were not pled in this case," so there was no claim for punitive damages. He argued that Rogers

was trying "to inflame the jury" and wanted "to put on evidence so the jury [would] punish [him] because he . . . didn't have good brakes." Thames contended that such evidence was improper and unfairly prejudicial because he had "admitted [the accident was] his fault," and there was no claim for punitive damages.

¶7.     Prior to ruling on Thames's motion in limine, the trial judge also noted that Rogers's complaint did not seek punitive damages and that Rogers had never filed a motion to amend his complaint. Accordingly, there was no claim for punitive damages. The judge also emphasized that Thames had stipulated his negligence was the sole proximate cause of the accident. Based on those considerations, the court concluded that the evidence regarding Thames's brakes should be excluded because it was no longer relevant and "would tend to inflame or prejudice a jury." However, the judge made clear that Rogers could present evidence regarding the severity of the collision and the speed of Thames's car.

¶8.     The parties then proceeded with jury selection. After jury selection and just before opening statements, Rogers made an ore tenus motion to amend his complaint to assert a claim for punitive damages. Thames opposed the motion, and the trial judge denied the motion. The judge noted that Rogers had failed to file a motion to amend his complaint at any time since Thames's deposition eighteen months earlier, and he found that Thames would be prejudiced by such a belated amendment.

¶9.     The only witnesses were Thames, Rogers, and Rogers's doctor, Dr. Gregory Bredemeier.[1] Rogers showed that he had incurred medical expenses of $7,388.25. He did

_____

[1] Dr. Bredemeier's pretrial deposition was read into the record.

4

not put on any proof of lost wages. The jury instructions included the following instruction:

> [Thames] has . . . agreed and stipulated that [his] negligence was the sole proximate cause of the accident. Therefore, the only issue left for you, the jury, to determine is: the amount of damages [Rogers] is entitled to as a result of any injuries he suffered in the accident in question.

In her closing argument, Rogers's attorney asked the jury to award Rogers $50,000 for medical expenses, pain and suffering, and emotional distress. In contrast, Thames's attorney suggested that $12,000 would be an appropriate award. The jury returned a verdict in favor of Rogers and found that he had sustained damages of $13,000.

## ANALYSIS

I.      **Rogers waived his argument that the trial judge abused his discretion by denying his motion to amend his complaint by failing to mention the issue in his opening brief.**

¶10.    Rogers's opening brief does not identify the denial of his motion to amend his complaint in his statement of issues. *See* M.R.A.P. 28(a)(3). Indeed, Rogers's opening brief does not even *mention* the motion or punitive damages. Rogers does raise the issue in his *reply* brief.[2] However, "[i]t is a well-established rule that we will not consider issues raised for the first time in an appellant's reply brief." *Chisholm v. State*, 298 So. 3d 1046, 1050

---

[2] In his reply brief, Rogers argues that the trial judge abused his discretion "by not ruling on" his ore tenus motion to amend his complaint. The judge may not have used the word "denied," but it is clear from context that he ruled on the motion. The judge emphasized that Rogers failed to move to amend the complaint prior to trial, he found that Thames would be prejudiced by such a belated amendment, and then he stated, "[S]o that's my ruling." It is also apparent from the transcript that Rogers's attorneys understood that the motion had been denied. Moreover, if we accepted Rogers's position that the judge did not rule on the motion, that would just be another reason for finding that Rogers had waived the issue. *See, e.g.*, *Graham v. State*, 264 So. 3d 819, 821 (¶7) (Miss. Ct. App. 2018) ("[A] motion, standing alone, will not preserve the issue for appeal unless the party pursues it to a ruling by the trial court . . . .").

5

(¶13) (Miss. Ct. App. 2020) (brackets and quotation marks omitted); *accord, e.g.*, *Biegel v. Gilmer*, No. 2018-IA-01172-SCT, 2020 WL 728772, at *2 (¶11) (Miss. Feb. 13, 2020); *Ray v. State*, 238 So. 3d 1118, 1122 n.3 (Miss. 2018); *Sanders v. State*, 678 So. 2d 663, 669-70 (Miss. 1996). As this Court recently stated, "To countenance this would deprive an appellee of the opportunity to respond to the argument." *Carroll v. City of Canton*, 296 So. 3d 751, 760 n.10 (Miss. Ct. App. 2020). Because Rogers raised this issue for the first time in his reply brief, the issue is waived.

¶11. The dissent asserts that we should disregard Rogers's waiver because the trial judge committed "plain error." But the trial judge did not abuse his discretion by denying Rogers's motion,[3] let alone commit "plain error."[4] As discussed above, Rogers did not move to amend his complaint until *after the jury had already been selected*, two and a half years after he filed suit. Moreover, Rogers gave no explanation for why he waited so long to seek leave to amend. Under these circumstances, the trial judge did not abuse his discretion by denying Rogers's belated motion. *See Barry*, 47 So. 3d at 695-96 (¶20) (holding that the trial judge did not abuse his discretion by denying a motion to amend the complaint to demand for punitive damages when the plaintiff "offered no reason . . . for waiting three years" to move

---

[3] *Barry v. Reeves*, 47 So. 3d 689, 695 (¶19) (Miss. 2010) (holding that an appellate court is "without authority to reverse" the denial of a motion to amend a complaint "unless convinced that the trial judge abused his discretion").

[4] "For the plain-error doctrine to apply, there must have been an error that resulted in manifest miscarriage of justice or seriously affects the fairness, integrity or public reputation of judicial proceedings." *Maness v. K & A Enters. of Miss. LLC*, 250 So. 3d 402, 415 (¶47) (Miss. 2018) (quoting *Johnson v. State*, 155 So. 3d 733, 738-39 (¶8) (Miss. 2014). "The error also must be a deviation from a legal rule by the trial court that is plain, clear, obvious, and has prejudiced the outcome of the trial." *Id.* at 410 (¶21).

to amend). Even more clearly, it is not "plain, clear, [or] obvious" that the trial judge abused his discretion. *Maness*, 250 So. 3d 410 (¶21). Accordingly, the plain-error doctrine is wholly inapplicable. *Id.*[5] This issue is both waived and without merit.

## II. The exclusion of evidence regarding Thames's brakes was harmless even if it was error.

¶12. Rogers argues that the trial judge abused his discretion by granting Thames's motion in limine and excluding evidence regarding Thames's bad brakes, as well as Thames's knowledge of his bad brakes. We review the trial judge's ruling for an abuse of discretion. *Bay Point Props. Inc. v. Miss. Transp. Comm'n*, 201 So. 3d 1046, 1052 (¶6) (Miss. 2016). "There is no abuse of discretion in granting a motion in limine if the court determines that (1) the material or evidence in question will be inadmissible at trial under the rules of evidence; and (2) the mere offer, reference, or statements made during trial concerning the material will tend to prejudice the jury." *Id.* (quotation marks omitted).

¶13. There are reasonable arguments on both sides of this issue. On one hand, we agree with Rogers that a plaintiff generally has a right to prove his case by introducing evidence that is relevant to the essential elements of his claim, and a court should not exclude such

---

[5] *In re Guardianship of Duckett*, 991 So. 2d 1165 (Miss. 2008), does not support the dissent's plain-error argument. In that case, the Supreme Court held that the chancellor committed plain error by failing to abide by a stipulation of fact related to damages. *Id.* at 1183-84 (¶¶44-46). The chancellor committed plain error because "[c]ourts are *bound* to enforce stipulations which parties may validly make" and "have no power" to make findings or enter judgments that contradict the terms of a valid stipulation. *Id.* at 1184 (¶45) (emphasis added) (quoting *Wilbourn v. Hobson*, 608 So. 2d 1187, 1189-90 (Miss. 1992)). In contrast, a trial judge is not *bound* to grant a motion to amend a complaint. Such a motion is committed to the *discretion* of the trial judge. Accordingly, there can be no "plain error" in connection with such a ruling unless it is plain, clear, or obvious that the trial judge abused his discretion. For the reasons explained in the text, that simply is not the case here.

evidence simply because the defendant stipulates to elements that the evidence is offered to prove. *See, e.g.*, *Smith v. Summers*, 334 F. Supp. 3d 339, 345 n.6 (D.D.C. 2018) (citing *Parr v. United States*, 255 F.2d 86, 88 (5th Cir. 1958)). Therefore, in general, a defendant cannot prevent the plaintiff from offering relevant evidence of negligence simply by stipulating that he was negligent.

¶14. On the other hand, a trial judge may exclude relevant evidence if he finds that "its probative value is substantially outweighed by a danger of . . . unfair prejudice," M.R.E. 403, and the trial judge is granted "broad discretion under Rule 403." *Batiste v. State*, 121 So. 3d 808, 863 (¶143) (Miss. 2013). In this particular case, once Thames stipulated both that he was negligent and that his negligence was the sole proximate cause of the accident, the marginal probative value of the evidence regarding Thames's brakes was greatly reduced. In addition, the trial judge perceived a danger that the evidence might influence the jury to award damages to punish Thames rather than to compensate Rogers.

¶15. In this case, we need not determine whether the trial judge ruled correctly because the exclusion of the evidence at issue was legally and logically harmless even if it was error. The jury was clearly instructed that Thames was negligent, that Thames's negligence was the sole proximate cause of the accident, and that the jury's only task was to determine the amount of Rogers's damages. *See supra* ¶9. The evidence regarding Thames's brakes was not logically relevant to that single issue. As Thames argues on appeal, "[t]he accident was what it was" regardless of what Thames knew about his brakes, and his knowledge about his brakes had no probative value regarding the amount of Rogers's damages. The impact and

the extent of Rogers's injuries were exactly the same whether Thames's (admitted) negligence consisted of negligent driving, a failure to get his brakes fixed, or both.

¶16.    Under these circumstances, any error in the exclusion of evidence was harmless. The jury followed the court's instructions and returned a verdict awarding Rogers damages. Rogers argues that the jury's award was too low,[6] but the $13,000 verdict exceeded his total medical bills of $7,388.25. More important, evidence about Thames's brakes would not have proved any additional compensatory damages.

¶17.    Logically, the excluded evidence could have impacted the jury's verdict *only* if it influenced the jury to award Rogers additional compensatory damages to punish Thames for not getting his brakes fixed. However, that would have been improper. "Compensatory damages are such damages as will compensate the injured party for the injury sustained, and nothing more . . . ." *Parsons v. Walters*, 297 So. 3d 250, 259 (¶32) (Miss. 2020) (internal quotation mark omitted) (quoting *Richardson v. Canton Farm Equip. Inc.*, 608 So. 2d 1240, 1250 (Miss. 1992)). "Compensatory damages should not be awarded as a means of punishment or deterrent for a defendant's reprehensible behavior, for [that] is the role of punitive damages . . . ." *Id.* Rogers cannot complain that he was deprived of a chance at an improper recovery of punitive damages in the guise of compensatory damages.

¶18.    "The verdict of the jury is to be given great weight." *Fielder v. Magnolia Beverage Co.*, 757 So. 2d 925, 928 (¶9) (Miss. 1999). "For a [judgment entered on a jury verdict] to be reversed based on the admission or exclusion of evidence, a party must be actually

---

[6] For the reasons explained below in Part IV, this argument is without merit.

prejudiced, harmed, or have a substantial right adversely affected." *Ill. Cent. R.R. Co. v. Brent*, 133 So. 3d 760, 779 (¶42) (Miss. 2013). "[T]o require reversal the error must be of such magnitude as to leave no doubt that the appellant was unduly prejudiced." *Fielder*, 757 So. 2d at 928 (¶9). The evidence that was excluded in this case would not have proved any additional compensatory damages. Therefore, any error in its exclusion was harmless and is not a basis for reversal.

### III. The trial judge did not abuse his discretion by denying Rogers's challenges for cause during jury selection.

¶19. Rogers argues that the trial judge abused his discretion by denying his challenges for cause to eleven prospective jurors. Rogers relies on the prospective jurors' responses to the following questions by his counsel during voir dire:

Q. -- [D]oes anybody think that -- anybody think that mental anguish damages are just made up damages? Okay.

A. PROSPECTIVE JUROR 6: I don't think all of them are made up.

. . . .

A. PROSPECTIVE JUROR 6: It's not black and white, but you have to take into account the possibility that it's what you're saying.

Q. . . . [T]he question is does anybody think that mental anguish, emotional pain and suffering-type damages are made up, make-believe. That people are milking --

A. PROSPECTIVE JUROR 11: Always? . . . .

Q. Always. Does anybody think --

A. PROSPECTIVE JUROR 11: Not always.

Q. Not always?

A.	PROSPECTIVE JUROR 11: Not always.

Q.	Okay. All right. So we'll start with you, Juror Number 6. Tell me what you mean by "not always." What would you need to see?

A.	PROSPECTIVE JUROR 6: Well, there would have to be some evidence of treatment.

Q.	Okay. So it's your belief that you would need treatment in order to substantiate any kind of mental anguish --

A.	PROSPECTIVE JUROR 6: I think I would need evidence of treatment to substantiate physical or mental.

Q.	Okay. Let's focus just on the mental -- mental and emotional right now. Okay.

	So is it your belief that if somebody did not have treatment like with a psychologist or psychiatrist that they did not suffer mental or emotional injury? Is that your belief?

A.	PROSPECTIVE JUROR 6: How -- how would I know?

Q.	I'm sorry.

A.	PROSPECTIVE JUROR 6: How would I know that? Only that person could know that.

Q.	So is it fair to say you would be uncomfortable awarding damages if someone did not have treatment for --

A.	PROSPECTIVE JUROR 6: It would make me more uncomfortable than if they had received treatment.

Q.	Okay. So it would make you more uncomfortable?

Q.	So does anybody feel like Juror Number 6? That they would feel more uncomfortable awarding damages for mental anguish suffering if there was no psychiatric treatment or treatment with a therapist? Okay. Juror Number 1, 2, 7, 15, 16, 19, 28, 27, 26, 25 and 24.

	Okay. And I just want to make sure -- of those who raised their hand,

11

I just want to make sure that you would not -- you could not consider awarding money damages if there was no treatment for mental and emotional damages? For those that raised their hand, is that a fair and accurate statement of your beliefs? Yes.

So raise your flag again just to confirm that for me. 1, 2, 6, 7, 15, 16, 19, 28, 26, 25, 24. Thank you.

¶20. Rogers objected to all eleven prospective jurors identified just above.[7] Jurors 2, 15, 16, and 19 were selected and served on the jury. Rogers argues that these jurors should have been stricken for cause based on their responses and that the judge abused his discretion by denying his challenges.

¶21. A juror may be removed for cause if a circumstance "exists that would likely affect his . . . impartiality at trial." *Patton v. State*, 248 So. 3d 763, 767 (¶30) (Miss. 2018) (quoting *Evans v. State*, 725 So. 2d 613, 653 (¶139) (Miss. 1997)). But "[w]hether a potential juror can be fair and impartial is a judicial question reserved for the trial judge and will not be disturbed unless clearly wrong." *Id.* "The [trial] judge, as he must, has wide discretion in determining whether to excuse any prospective juror . . . challenged for cause." *Scott v. Ball*, 595 So. 2d 848, 849 (Miss. 1992). That decision is a "judgment call peculiarly within the province of the [trial] judge, and one we will not on appeal second guess in the absence of a record showing a clear abuse of discretion." *Id.* at 850.

¶22. The trial judge did not abuse his discretion by denying Rogers's challenges. To begin with, Rogers's counsel misstated Juror Number 6's comment when he restated it for a second

---

[7] Rogers challenged a majority of the prospective jurors on the panel for one reason or another. The trial judge noted that the parties probably would not be able to select a jury if he sustained all of Rogers's challenges.

time. Juror Number 6 simply stated that he would be less comfortable awarding damages for emotional distress if the plaintiff had not "had treatment." Counsel then restated "treatment" as "psychiatric treatment or treatment with a therapist." Finally, counsel restated and misstated Juror Number 6's comments by stating that he "just want[ed] to make sure that" the jurors who had raised their hands "would not" and "could not consider awarding money damages if there was no treatment for mental and emotional damages." But that is *not* what Juror Number 6 stated, and it is impossible to tell from the transcript whether any prospective juror agreed with Juror Number 6's actual comments or Rogers's attorney's subsequent misstatement of those comments.

¶23. Moreover, we disagree that Juror Number 6's comments required the trial judge to strike him or any other prospective juror for cause. "In order to strike a juror for cause there must be a clear showing that the opinions of the prospective juror would substantially impair the performance of his duties." *McDonald v. State*, 921 So. 2d 353, 357 (¶14) (Miss. Ct. App. 2005). "A clear showing that a juror's views would prevent or significantly impair the performance of his duties requires more than a single response to an initial inquiry." *Id.* (quoting *Fuselier v. State*, 468 So. 2d 45, 55 (Miss.1985)). "A juror's views alone do not constitute grounds for a challenge." *Id.* (quoting *Martin v. State*, 592 So. 2d 987, 988 (Miss. 1991)).

¶24. In this case, Juror Number 6's responses reflected only his general "views," uninformed by any instructions on the law of damages. None of the challenged jurors expressed an unwillingness to follow the law. Moreover, "it should be kept in mind that

13

jurors take their oaths seriously, and this promise is entitled to considerable deference." *Id.* at (¶15). After the evidence was presented, the jury was properly instructed on damages, including damages for emotional distress, and the jury awarded damages in excess of Rogers's medical expenses. There is no evidence that any of the challenged jurors were partial, prejudiced, or unwilling or unable to follow the law. Accordingly, we find no abuse of discretion in the trial judge's denial of Rogers's challenge to these eleven jurors.

**IV.    The trial judge did not abuse his discretion by denying Rogers's motion for a new trial.**

¶25.    In his final issue on appeal, Rogers argues that the trial judge abused his discretion by denying his motion for a new trial because the jury's verdict was too low and did not adequately compensate Rogers for emotional damages. A new trial may be ordered if "the verdict is against the overwhelming weight of the evidence" or if "the jury has departed from its oath and its verdict is a result of bias, passion, and prejudice." *Bobby Kitchens Inc. v. Miss. Ins. Guar. Ass'n*, 560 So. 2d 129, 132 (Miss. 1989); *see* M.R.C.P. 59(a). However, "[t]he jury is the judge of the weight of the evidence and the credibility of the witnesses." *Bobby Kitchens Inc.*, 560 So. 2d at 131. Therefore, "this Court resolves all conflicts in the evidence" and "draws . . . all reasonable inferences" in favor the jury's verdict. *Id.* Furthermore, "[t]his Court will reverse a trial judge's denial of a request for new trial only when such denial amounts to a[n] abuse of that judge's discretion." *Id.* at 132. "The trial judge is accorded discretion, and our review is deferential, because the trial judge is in a 'superior position to decide such matters.'" *Knight v. Clark*, 283 So. 3d 1111, 1119 (¶25) (Miss. Ct. App. 2019) (ellipsis omitted) (quoting *Amiker v. Drugs For Less Inc.*, 796 So. 2d

14

942, 948 (¶21) (Miss. 2000)), *cert. denied*, 283 So. 3d 735 (Miss. 2019); *accord Little v. State*, 233 So. 3d 288, 291-92 (¶¶18-19) (Miss. 2017).

¶26.    Rogers's argument that he is entitled to a new trial simply incorporates the arguments already addressed above in Parts II and III. That is, Rogers argues that he is entitled to a new trial because the trial judge granted Thames's motion in limine and denied Rogers's challenges for cause. For the reasons already discussed above in Parts II and III, neither issue warrants a new trial.

¶27.    Moreover, we cannot say that the jury's verdict is contrary to the overwhelming weight of the evidence or a product of bias, passion, or prejudice. As discussed above, the jury's award of $13,000 exceeded Rogers's medical expenses of $7,388.25. The excess ($5,611.75) presumably reflects an award for pain and suffering and/or emotional distress. Such an award is reasonable and not out of line with the evidence presented at trial. Following the accident, Rogers's attorney referred him to Dr. Bredemeier. Rogers saw Bredemeier from May 26, 2015, to July 21, 2015, for neck and back pain, headaches, and muscle spasms. On July 21, 2015, Rogers told Bredemeier that he was "back to his normal pre-injury state" and was not experiencing any pain or discomfort. He also told Bredemeier that "he ha[d] been working full time and [that it was] going well." On that date, Bredemeier released Rogers without restrictions or limitations, and Rogers has not sought treatment for his injuries since. At trial, Rogers testified that he had experienced emotional distress because he had been unable to work during his two-month treatment with Bredemeier.[8]

_____

[8] Rogers worked as a ceramic tile layer at the time of the accident.

15

However, Bredemeier's records suggested that Rogers had continued to work on at least a limited or restricted basis, and Rogers presented no evidence of lost wages. In addition, Rogers testified as follows during his deposition:

> Q. Your complaint makes a claim for what's called emotional distress or mental anguish, and I need -- I just need to ask has this accident -- anything about this accident or your injuries, has it affected you emotionally or mentally in any way?
>
> A. No, sir.

Rogers contradicted this testimony at trial, but the jury was entitled to credit his deposition testimony. *See Dixon v. Dixon*, 238 So. 3d 1191, 1199 n.9 (Miss. Ct. App. 2018).

¶28. Based on the totality of the evidence, the jury's award of $13,000 is not contrary to the overwhelming weight of the evidence. Accordingly, the trial judge did not abuse his discretion by denying Rogers's motion for a new trial.

## CONCLUSION

¶29. Rogers waived any challenge to the trial judge's denial of his motion to amend his complaint because he failed to mention that issue in his opening brief on appeal. And, in any event, the trial judge did not abuse his discretion by denying Rogers's belated motion to amend. The exclusion of evidence regarding Thames's brakes was logically and legally harmless even if it was error because the excluded evidence would not have proved any additional compensatory damages. Accordingly, even if the trial judge erred by granting Thames's motion in limine, the error was harmless. Finally, the trial judge did not abuse his discretion by denying Rogers's challenges for cause during jury selection or by denying Rogers's motion for a new trial.

16

¶30.  **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE AND LAWRENCE, JJ., CONCUR. McDONALD, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS AND McCARTY, JJ.**

**McDONALD, J., DISSENTING:**

¶31.  I respectfully dissent from the majority's affirmance.[9]  The majority completely disregards the fact that Thames's "stipulation" of negligence amounted to nothing more than a unilateral filing because Rogers never signed or accepted Thames's "stipulation" as required by law.  Because of the circuit court's reliance on Thames's unilateral filing, the court created a domino effect of erroneous rulings.  After the court's decision that a proper stipulation existed, the court then erroneously (1) granted Thames's motion in limine to exclude evidence about his knowledge of his bad brakes and (2) denied Rogers's motion to amend his complaint.  Furthermore, during trial, Thames admitted that he acted carelessly and recklessly, but Rogers could not question Thames about the knowledge of his bad brakes because of the court's prior rulings.  The court's errors clearly prejudiced Rogers and unduly restricted the presentation of his case, which affected Rogers's substantive right to have a fair trial.  Not only did the circuit court abuse its discretion in its dependance on Thames's unilateral filing of a "stipulation" in granting Thames's motion in limine, I find that court committed plain error in denying Rogers's motion to amend his complaint.

*A.  Improper Stipulation*

¶32.  The Mississippi Supreme Court has indicated that courts are bound by mutual

---

[9] I agree with the majority that the circuit court did not abuse its discretion by denying Rogers's challenges for cause during jury selection.

stipulations when made by all parties in the litigation:

> Courts, both trial and appellate, are bound by stipulations in respect of matters which may validly be made the subject matter of stipulations. Courts are bound to enforce stipulations which *parties* may validly make, where they are not unreasonable or against good morals or sound public policy. Ordinarily they have no power to go beyond the terms of such stipulations or to make findings contrary to the terms of a stipulation, or render a judgment not authorized by its terms.

*In re Guardianship of Duckett*, 991 So. 2d 1165, 1183 (¶45) (Miss. 2008) (emphasis added) (quoting *Wilbourn v. Hobson*, 608 So. 2d 1187, 1189-90 (Miss. 1992); 83 C.J.S. *Stipulations* § 17 (1953)). Black's Law Dictionary defines stipulation as, "A voluntary agreement between opposing parties concerning some relevant point." Black's Law Dictionary 1427 (7th ed.1999). "A stipulation of fact is a fact [that] both parties agree is true." *Harper v. Harper*, 926 So. 2d 253, 256 (¶10) (Miss. Ct. App. 2006) (citing *Wilbourn*, 608 So. 2d at 1189)). "Where the parties file and gain court approval of a formal stipulation agreement[,] the factual issues addressed in the agreement are forever settled and excluded from controversy." *Douglas v. Douglas*, 766 So. 2d 68, 71 (¶9) (Miss. Ct. App. 2000) (quoting *Wilbourn*, 608 So. 2d at 1189). Further, this court has held that "[f]actual stipulations set boundaries beyond which this Court cannot stray." *Brame v. Brame*, 127 So. 3d 225, 231 (¶27) (Miss. Ct. App. 2000) (quoting *Wilbourn*, 608 So. 2d at 1189).[10]

¶33. The circuit court erroneously held that evidence of Thames's knowledge of his faulty brakes was not relevant because of Thames's unilateral "stipulation" of negligence. But the

---

[10] There are several cases where this Court has held that the lower courts must rely upon a stipulation but only when both parties agreed to the stipulation. *E.g.*, *In re Guardianship of Duckett*, 991 So. 2d at 1184 (¶46); *Harper*, 926 So. 2d at 256 (¶10); *Wilbourn*, 608 So. 2d at 1194.

court was not bound by Thames's improperly filed stipulation because both parties did not agree to the stipulation. Here, in July 2017, a few weeks before the originally scheduled trial, Thames filed his "Stipulation of Negligence." Thames's "stipulation" was not a stipulation, where both parties agreed. 83 C.J.S. *Stipulations* § 17 (1953). While courts are bound to accept the stipulations agreed to by the parties, in this case, because Rogers had filed a response specifically objecting to Thames's stipulation, the circuit court was not bound by the stipulation and should not have excluded relevant evidence because of it. Moreover, by filing this unilateral "stipulation" of negligence, Thames was in fact attempting to amend his answer, which is not allowed after joinder of the issues without leave of court or agreement of the parties under Rule 15(a) of the Mississippi Rules of Civil Procedure.[11] Therefore, because the circuit court relied on Thames's "stipulation," the court erred in granting Thames's motion in limine. The majority mistakenly holds that even if the circuit court erred in granting Thames's motion in limine, it was harmless error because of Thames's "stipulation." But (1) Thames's "stipulation" was clearly a unilateral filing disguised as a proper stipulation; and (2) the circuit court's reliance on Thames's filing denied Rogers the opportunity to fully try his case.

¶34. A motion in limine should not be granted if it will "unduly restrict the opposing

---

[11] Rule 15(a) of the Mississippi Rules of Civil Procedure states that "[a] party may amend a pleading as a matter of course at any time before a responsive pleading is served, or, if a pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within thirty days after it is served." M.R.C.P. 15(a). "Otherwise a party may amend a pleading only by leave of court or upon written consent of the adverse party; leave shall be freely given when justice so requires." *Id*.

party's presentation of its case." *Crane Co. v. Kitzinger*, 860 So. 2d 1196, 1201 (¶18) (Miss. 2003) (quoting *Sims v. Collins*, 762 So. 2d 785, 788 (¶14) (Miss. Ct. App. 2000)). This Court has held that "a jury [should be] allowed to hear the entire series of events connected with the accident." *Sims*, 762 So. 2d at 788 (¶14). During Thames's deposition, he admitted that he knew he had bad brakes and those bad brakes caused the accident. Although the circuit court allowed Rogers to present evidence of the severity of the collision, Rogers's case was limited by the exclusion of Thames's testimony regarding his knowledge about his defective brakes. By granting Thames's motion in limine, the circuit court unduly restricted the presentation of Rogers's case and prevented Rogers's counsel from further questioning Thames about his knowledge of his bad brakes.

### B. Motion to Amend

¶35. "If there is a finding of plain error, a reviewing court may consider the issue regardless of the procedural bar." *Fulks v. State*, 110 So. 3d 764, 772 (¶30) (Miss. 2013) (quoting *McGee v. State*, 953 So. 2d 211, 215 (¶8) (Miss. 2007)). "A review under the plain error doctrine is necessary when a party's fundamental rights are affected, and the error results in a manifest miscarriage of justice." *Johnson v. State*, 235 So. 3d 1404, 1414 (¶31) (Miss. 2017) (quoting *McGee*, 953 So. 2d at 215 (¶8)). There is no bar to applying the plain-error doctrine in a civil case. *Herrin v. Perkins*, 282 So. 3d 727, 732 (¶17) (Miss. Ct. App. 2019) (citing *Maness v. K & A Enters. of Miss. LLC*, 250 So. 3d 402, 410 (¶21) (Miss. 2018)). The doctrine is best used for "'correcting obvious instances of injustice or misapplied law.'" *Swinney v. State*, 241 So. 3d 599, 606 (¶14) (Miss. 2018) (quoting *Green*

20

*v. State*, 183 So. 3d 28, 31 (¶6) (Miss. 2016)). In order to reverse under the plain error doctrine, the reviewing court must find "both error and harm." *Riggs v. State*, 744 So. 2d 365, 372 (¶27) (Miss. Ct. App. 1999).

¶36. The majority finds that *In re Guardianship of Duckett*, 991 So. 2d 1165 (Miss. 2008), is inapplicable to this case because "a trial judge is not bound to grant a motion to amend a complaint," and "[s]uch a motion is committed to the discretion of the trial judge." (Emphasis omitted). Again, the majority ignores that this is not a valid stipulation, and whether discretionary or not, the court cannot impose upon a litigant's fundamental and substantial rights. *Duckett* is applicable with regard to Mississippi's appellate court stance as to stipulations. To be able to exercise the option of plain-error review, the appellate court must find (1) "that a party has failed to preserve an error for appellate review and (2) that a substantial right is affected." *Id.* at 1183 (¶43). In *Duckett*, the Mississippi Supreme Court stated that "[a] monetary interest is a substantial right." *Id.* The Supreme Court further held that the chancery court's erroneous handling of stipulations of fact was an error that affected that right, and the supreme court proceeded to review the chancery court's rulings under the plain-error doctrine. *Id*. *Duckett* is applicable with regard to the Mississippi Supreme Court's stance as to stipulations. Rogers's substantial right to his monetary interest was clearly affected by Thames's "stipulation," which was nothing more than a unilateral filing (and by definition not a stipulation). Because the circuit court enforced Thames's filing as a "stipulation," denied Rogers's motion to amend, and precluded evidence that affected Rogers's monetary interest, I find grounds to review the circuit court's errors under the plain-

21

error doctrine.

¶37.    Rule 15(a) states that amending a pleading "shall be freely given when justice so requires."  M.R.C.P. 15(a).  "[I]f the underlying facts and circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Jones v. Miss. Institutions of Higher Learning*, 264 So. 3d 9, 29 (¶60) (Miss. Ct. App. 2018) (quoting *Frank v. Dore,* 635 So. 2d 1369, 1375 (Miss. 1994)), *cert. denied*, 263 So. 3d 666 (Miss. 2019).  "[A]n amendment should be denied only if the amendment would cause actual prejudice to the opposite party." *Id*. (quoting *TXG Intrastate Pipeline Co. v. Grossnickle*, 716 So. 2d 991, 1011 (¶59) (Miss. 1997)).  "Delay alone is not sufficient reason to deny leave to amend." *Id*. at 30 (¶64) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509-10 (4th Cir. 1986)).  "The delay must be accompanied by prejudice, bad faith, or futility." *Id*.  The Mississippi Supreme Court has stated that because "attorneys sometimes fail to write perfect pleadings, it is necessary that courts permit liberal amendments of the pleadings in order to reach the actual merits of a controversy." *Id*. at (¶65) (quoting *Simmons v. Thompson Mach. of Miss. Inc.*, 631 So. 2d 798 (Miss. 1994)).  This Court reviews a court's decision to grant or deny leave to amend under the abuse-of-discretion standard of review. *Id*. at 28-29 (¶60) (citing *Webb v. Braswell*, 930 So. 2d 387, 392 (¶8) (Miss. 2006)).

¶38.    In this case, Rogers should have been allowed to amend his complaint, and the exclusion of Thames's sworn testimony about his knowledge about the condition of his bad brakes prejudiced Rogers.  Prior to trial, Rogers specifically moved to amend his complaint

to ask for punitive damages.[12] The court denied that motion. "But for" the circuit court's erroneous application of Thames's "stipulation" and denial of his motion to amend for punitive damages, Rogers would have been able to elicit from Thames that Thames's knew his brakes were bad and that he had been driving with disregard for the safety of the driving public.

¶39. While the majority emphasizes and agrees with the circuit court that Thames would be prejudiced had the court granted Rogers's motion to amend, I find no merit to this argument. Thames would not have been prejudiced because he knew the true facts from the beginning and tried to end-run Rogers from presenting them by filing an improper "stipulation." Nor would Thames have been prejudiced if, after presentation of the evidence, the circuit court granted Rogers's motion to amend the damages portion of his complaint to include punitive damages. The majority entirely ignores the admission by Thames during trial that he was driving recklessly, which was sufficient to support Rogers's motion to amend and request punitive damages. When questioned on direct examination, Thames testified as follows:

> Q. You heard your lawyer on his opening statement say that you are 100 percent responsible?
>
> A. Yes, sir.
>
> Q. So as it stands today, you admit you were careless?

---

[12] Rogers first cited Rule 15(b) of the Mississippi Rules of Civil Procedure in his response to Thames's motion in limine to show that he was entitled to amend his complaint if the court found that the defendant's gross negligence giving rise to punitive damages was not specifically in the complaint. Thus, Thames was on notice that should the motion in limine be granted, Rogers would be seeking to amend his complaint.

A.      Yes, sir.

Q.      You admit that you were reckless?

A.      Yes, sir.

If the court granted such a motion at the end of the compensatory phase of the trial, Thames could still have argued that the proof did not warrant a punitive damages phase should the jury return a verdict in favor of Rogers. The court has the discretion to determine whether to send the issue of punitive damages to the jury.[13] By denying Rogers's motion to amend, either before or after the presentation of the evidence, the circuit court manifested a miscarriage of justice. Not only did the circuit court abuse its discretion in granting Thames's motion in limine, but the court also abused its discretion in denying Rogers motion to amend to conform to the evidence.

¶40.    Moreover, although Thames filed his motions in limine in July 2017, he failed to set them for a hearing until over a year later. Rule 2.04 of the Uniform Rules of Circuit and County Court Practice states that "[i]t is the duty of the movant, when a motion or other pleading is filed . . . to pursue said motion to hearing and decision by the court. Failure to pursue a pretrial motion to hearing and decision before trial is deemed an abandonment of that motion." Thames's motion was not heard until the day of trial, the same day which Rogers moved to amend. If the court were going to grant Thames's motion in limine, it likewise should have allowed Rogers's amendment.

---

[13] A judge can determine as a matter of law whether the jury will be allowed to consider the issue of punitive damages. *Estate of Gibson ex rel. Gibson v. Magnolia Healthcare Inc.*, 91 So. 3d 616, 631 (¶45) (Miss. 2012).

24

¶41. In sum, the circuit court abused its discretion and plainly erred by its mistaken reliance on Thames's unilateral filing, which led to erroneous rulings. By granting Thames's motion in limine regarding his knowledge about the condition of his bad brakes and denying Rogers's motion to amend, the court unduly restricted Roger's presentation of his case. For the reasons stated, I vehemently dissent from the majority's affirmance.

**WESTBROOKS AND McCARTY, JJ., JOIN THIS OPINION.**